UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In the Matter of:<br><br>THE COMPLAINT OF WILLIAM and MYO SHEARS, owners of the M/V SHEAR JOY, Washington Registration No. WN6268JC for Exoneration from or Limitation of Liability. | Case No. C14-1296RSM<br><br>ORDER GRANTING PETITIONERS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This admiralty matter comes before the Court on Petitioners' Motion for Summary Judgment. Dkt. #33. Petitioners seek an Order finding that the claimants cannot meet their burden of proving that either negligence or unseaworthiness of the SHEAR JOY caused their damages. *Id.* Claimants Falvey Yacht Insurance, LLC, and Shelter Bay Marina (hereinafter "claimants") respond that they have evidence demonstrating issues of material fact that preclude summary judgment in favor of the Petitioners.[1] Dkt. #41. Having reviewed the record before it, and having determined that oral argument is not necessary, the Court now GRANTS Plaintiff's motion for the reasons set forth herein.

## II. BACKGROUND

This matter arises from the February 21, 2014, fire at "J" Dock, Shelter Bay Marina in La Conner, Washington. Dkt. #1. The Petitioners, William and Myo Shears, owned the 43-

---

[1] The Court notes that while there are other claimants in this matter, they have not responded to the instant motion.

ORDER
PAGE - 1

foot, 1983 Tollycraft motor yacht, SHEAR JOY, which they purchased at an auction sale in June of 2010. Dkt. #35 at ¶ 2.

The following allegations do not appear to be in dispute. Petitioners leased from the Shelter Bay Company a 48-foot slip known as "J-8," located at "J Dock" at the Shelter Bay Marina in La Conner, Washington, where they kept the SHEAR JOY. Dkt. #1 at ¶ 6. On February 21, 2014, the petitioners were in Nevada, driving back to Washington after a short vacation to visit friends in Arizona. *Id.* at ¶ 7. At that time, electrical power was supplied to the SHEAR JOY by the Shelter Bay Company through a shore power connection. *Id.* At approximately 4:20 p.m. on February 21, 2014, fire broke out on J Dock, or on one or more of the vessels moored there. *Id.* at ¶ 8. The fire was observed by many, as it was still daylight when it started, and February 21, 2014, was a Friday afternoon. *Id.* Several boats were pulled away from J Dock, but in total seven boats, including the SHEAR JOY, burned to the waterline and sank at their moorings. Several more vessels at J Dock, and nearby, reportedly sustained repairable damage. *Id.* J Dock itself sustained substantial damage from the fire. *Id.* Fortunately, there were no personal injuries. After it was reported, the fire was eventually extinguished by emergency responders. *Id.* at ¶ 10.

There is a dispute as to where and how the fire originated. After Petitioners became aware of allegations that the SHEAR JOY was the "boat of origin" for the Shelter Bay Fire, they filed the instant action for Exoneration from or Limitation of Liability. Dkt. #1. Discovery followed and Petitioners have filed this motion for summary judgment. Claimants and their expert assert that the shore power source for the SHEAR JOY was the origination of the fire and that Petitioners are liable for damages because they negligently maintained the boat and its power source. Dkt. #41.

ORDER
PAGE - 2

### III. DISCUSSION

**A. Legal Standard on Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B. Expert Richard Carman**

As an initial matter, the Court addresses Petitioners' argument that the claimants' expert Richard Carman's opinions should be excluded. Dkt. #44 at 2-6.  The Court notes that this argument was raised for the first time in the Reply brief.  Typically, the Court will not consider an argument raised for the first time in Reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (noting that district courts need not consider arguments raised for the first time in a reply brief). However, the Court recognizes that, in determining admissibility, it is mandated to

ORDER
PAGE - 3

perform the "gatekeeper" function articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. In this case, the Court does not require any response from the claimants in order to analyze the admissibility of Mr. Carman's opinions.

The Supreme Court has clarified that the reliability standard is "a flexible one." *Kumho Tire,* 526 U.S. at 150. The Court has suggested several factors that can be used to determine reliability: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *Estate of Henry Barabin,* 740 F.3d at 463 (citing *Daubert*, 509 U.S. at 592-94). However, whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* (citing *Kumho Tire,* 526 U.S. at 153).

Petitioners argue that Mr. Carman's opinions are unreliable because, while he purports to follow National Fire Protection Association ("NFPA") standards in forming his opinions, he did not actually do so. Dkt. #44 at 2. Petitioners are correct that numerous courts have found NFPA 921 to be an acceptable guide for fire investigation methodology. *See Schlesinger v. United States,* 898 F. Supp. 2d 489, 504 (E.D.N.Y. 2012) (collecting cases); *Russ v. Safeco Ins. Co.,* No. 2:11cv195-KS-MTP, 2013 U.S. Dist. LEXIS 42333, 2013 WL 1310501, at *24 (S.D. Miss. Mar. 26, 2013) (collecting cases). Moreover, courts have often excluded expert testimony that fails to comport with NFPA 921 standards when the expert witness explicitly references the guide in reaching his or her conclusions. *See Russell v. Whirlpool Corp.,* 702

ORDER
PAGE - 4

F.3d 450, 455 (8th Cir. 2012); *Schlesinger,* 898 F. Supp. 2d at 504 (collecting cases). This Court has recognized as much. *See Affiliated FM Ins. Co. v. LTK Consulting Servs.*, 2014 U.S. Dist. LEXIS 53203, *11-12 (W.D. Wash. Apr. 16, 2014). However, it is also true that "an expert's reliance on a methodology other than NFPA 921 does not render his opinions per se unreliable." *See Russell,* 702 F.3d at 455 ("We have held NFPA 921 qualifies as a reliable method endorsed by a professional organization, . . . but we have not held NFPA 921 is the *only* reliable way to investigate a fire.") (italics in original; citations omitted); *see also Schlesinger*, 898 F. Supp. 2d at 504 ("[T]he Court is aware of no court in this circuit that has refused to admit expert testimony in an arson case because his or her opinion was based on a methodology other than that prescribed in NFPA 921.").

In this case, Mr. Carman does not reference NFPA 921 in his expert report. *See* Dkt. #34, Ex. 1. In his report, Mr. Carman purports to rely on his "extensive experience, training, and education in fire investigation and the determination of the origination and cause of fires, examination and analyzing fire scenes and fire-damaged vessels and equipment, fire analysis, and the extensive work" he performed in this matter. Dkt. #34, Ex. 1 at 1. He later testified in his deposition and states in a Declaration in support of the claimants' opposition to this motion that he also relied on the expertise of his electrical engineer and "used NFPA 921 guidelines to then deduce the cause of the fire." Dkts. #42 at ¶ 4 and #45, Ex. 2 at 41:15-17. In arguing that Mr. Carman's testimony is unreliable, Petitioners assert that Mr. Carman's conclusion departs from multiple provisions of the NFPA guidelines, which mandate he reach the conclusion that the cause of the fire is undeterminable under these circumstances. Dkt. #44 at 2-6. Petitioners base their argument on the fact that Mr. Carman could not test his hypothesis as neither the shore power receptacle nor the shore power plug was ever recovered after the fire. *Id.*

ORDER
PAGE - 5

Given that Mr. Carman does not specifically rely on NFPA 921 guidelines in his expert report, and explains his reliance on and alleged departures from NFPA 921 in his deposition, the Court finds that Petitioners' complaints more properly go to the weight of his testimony, rather than providing the basis for disqualification. The failure to test does not automatically render expert testimony regarding the origin and cause of fires inadmissible. *See, e.g., Hickerson v. Pride Mobility Prods. Corp.,* 470 F.3d 1252, 1257 (8th Cir. 2006) (holding admissible a fire causation expert opinion where the methodology involved no testing but the application of specialized knowledge to observations of a fire scene). Accordingly, the Court declines to exclude Mr. Carman's opinions at this time.

**C. Negligence and Unseaworthiness**

The Court thus turns to Petitioners' arguments regarding liability. The Limitation of Liability Act, codified at 46 U.S.C. § 30505, applies to both commercial vessels and non-commercial "pleasure craft," *Matter of Hechinger*, 890 F.2d 202, 206 (9th Cir. 1989), and "limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's 'privity or knowledge.'" *In re BOWFIN M/V*, 339 F.3d 1137, 1137 (9th Cir. 2003) (per curiam). Ascertaining whether a shipowner may limit his liability is a two-step process. *Id.*; *Hechinger*, 890 F.2d at 207. "First, the court must determine what acts of negligence or conditions of unseaworthiness caused the accident." *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1563-64 (11th Cir. 1985) (quoting *Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976)); *accord Hechinger*, 890 F.2d at 207. "That is, a liability must be shown to exist." *Hechinger*, 890 F.2d at 207.

"Second, the court must determine whether the shipowner had knowledge or privity of those same acts of negligence or conditions of unseaworthiness" that caused the accident.

ORDER
PAGE - 6

*Hercules*, 768 F.2d at 1564. "This burden is not met by simply proving a lack of actual knowledge, for privity and knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge." *Id.* The claimant bears the initial burden of establishing the unseaworthy condition or negligence that served as the "causative agent." *Carr v. PMS Fishing Corp.*, 191 F.3d 1, 4 (1st Cir. 1999); *Hercules*, 768 F.2d at 1564. "If the claimant succeeds in that first-stage endeavor, the burden then shifts to the shipowner to establish its lack of privity and knowledge." *Carr*, 191 F.3d at 4 (citing *Hercules*, 768 F.2d at 1564).

   1. *Step One: Liability*

Petitioners dispute, but have assumed for purposes of this motion, that the fire originated from the SHEAR JOY. They do not assume or concede, however, that the fire resulted from the vessel's shore power receptacle. Petitioners argue that, even assuming the fire started on their boat, the claimants have no evidence proving what caused the fire to start, or that such cause was the result of negligence or an unseaworthy condition.[2] Claimants attempt to meet their burden of proof at step one by demonstrating that (1) the fire was caused by the Shears' negligent acts and/or (2) the fire was caused by the unseaworthy condition of the SHEAR JOY. The Court examines each assertion in turn.

   a. <u>Liability Based on Negligence</u>

Despite their best efforts, the Court now finds that the claimants are unable to demonstrate that any negligent acts by the Shears caused the fire on the SHEAR JOY. Thus,

---

[2] The Court acknowledges that on summary judgment, the initial burden is on the moving party. However, since Claimants have the burden of proof in the underlying action at this step, the Shears can show that there are no genuine issues of material fact simply by demonstrating there is no evidence to support a negligence claim. *See Celotex*, 477 U.S. at 325.

ORDER
PAGE - 7

they fail to meet their burden of proof at step one with respect to negligence. *See Carr*, 191 F.3d at 4.

In this case, the claimants attribute the fire to Mr. Shears' alleged failure "to reasonably and regularly inspect his shore power connection.[3] Dkt. #41 at 4. The claimants have scant evidence to support this theory. Indeed, this theory is based on the fact that Mr. Shears apparently failed to fix a faulty electrical outlet that he was not using, and that he failed to clean the electrical contacts on the receptacle he was using monthly. Dkt. #41 at 12. According to the claimants, Mr. Shears is also negligent because he failed to inspect his shore power connection "periodically or regularly." *Id.* The claimants rely primarily on Mr. Shears' deposition testimony that he did not check to see if the shore power receptacle had loose wires inside connected to it, did not hire anyone to fix the nonworking receptacle, and that he could not remember the last time he inspected the shore power receptacle. Dkt. #41 at 3-4 (citing Dkt. #43, Ex. A at 58:21-24, 67:11-23 and 85:22-86:15). In addition, they rely on their expert's conclusion that the power receptacle must have started the fire because the boat's electrical appliances and space heaters did not appear to cause the fire and it is not uncommon for fires to start in power receptacles. Dkt. #34, Ex. 1.

On the record currently before the Court, there is not enough evidence for a reasonable jury to find that the Shears were negligent under this theory. *See Galen v. County of Los Angeles*, 477 F.3d 62, 658 (9th Cir. 2007). Indeed, the claimants' entire negligence case under this theory is based on speculation, including that of their expert. The claimants have seized on the fact that their expert ruled out other electrical sources on the SHEAR JOY, but they fail to account for the fact that the shore power receptacle was incapable of being tested because

---

[3] They also argue that improperly functioning shore power receptacles are considered to be unseaworthy conditions aboard vessels. Dkt. #41 at 8.

ORDER
PAGE - 8

neither the shore power receptacle nor the shore power plug was recovered after the fire. Dkt. #45, Ex. 2 at 131:2-7, and 154:19-157:1. In addition, claimants' expert admits that he has no evidence that: 1) there was anything wrong with the Shears' shore power; 2) that the shore power connection was corroded; 3) the shore power connection was loose; 4) there was any form of resistance that was causing heat from the location of the shore power connection; 5) that Mr. Shears was negligent in any manner; or 6) that the SHEAR JOY was unseaworthy in any manner. Dkt. #45, Ex. 2 at 128:2-13 and 143:11-16. The claimant's expert also admits that he is not an electrical expert, does not know what tests his electrical engineer conducted, and has nothing in writing, including any reports, from his electrical engineer. Dkt. #45, Ex. 2 at 23:14-25:25:9 and 144:22-145:10. As a result, any conclusion about the Shears' actions or inactions with respect to the power receptacles, and that such actions or inactions led to the origination of the fire, would require speculation. Speculation alone is not enough to defeat summary judgment. *See Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Moreover, a jury is not permitted to resort to speculation in reaching its verdict at trial. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1136, 1138 (9th Cir. 2009).

Accordingly, the Court finds that summary judgment is appropriate with respect to this negligence theory. No reasonable jury could find for the claimants on the evidence presented, even construing it in the light most favorable to the claimants. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed.2d 686 (2007). The connection between the claimants' evidence and a valid negligence claim is too attenuated to defeat summary judgment.

b. <u>Liability Bases on Unseaworthiness</u>

Likewise, the claimants cannot succeed on an unseaworthiness theory. As noted above, the claimants have also argued that an unseaworthy condition caused the fire on the SHEAR JOY. However, this argument is based on the assumption that there was a problem with the

ORDER
PAGE - 9

shore power receptacle. Dkt. #41 at 8. As noted above, there is no evidence that the power receptacle was not functioning properly or that the Shears negligently allowed such a condition to occur or persist. Accordingly, this theory fails as a matter of law.

*2. Step Two: Knowledge or Privity*

At step two, the burden shifts to the shipowner to demonstrate a lack of knowledge or privity of the acts of negligence or conditions of unseaworthiness that caused the accident. *Anderson*, 847 F. Supp. 2d at 1271-72. The Court need not reach this step given the conclusion that the claimants have failed to present enough evidence to support their negligence or unseaworthiness theories.

## IV.     CONCLUSION

Having reviewed Petitioners' motion for summary judgment, along with all supporting declarations and exhibits, the opposition thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1. Petitioners' Motion for Summary Judgment (Dkt. #33) is GRANTED.

2. The parties shall file a Joint Status Report <u>within ten (10) days of the date of this Order</u> informing the Court of any issues that remain to be resolved in this matter, or whether the Court may enter Judgment and close this matter.

DATED this 4 day of January, 2016.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10